## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBBIE CARTHAN & MARK WADE, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>HUDSON'S BAY COMPANY, SAKS FIFTH AVENUE LLC, and LORD & TAYLOR LLC,<br><br>    Defendants. | Case No.:<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs, Debbie Carthan & Mark Wade, individually and on behalf of a class of persons similarly situated (the "Class" or "Class Members"), bring this class action against Defendants Hudson's Bay Company ("HBC"), Saks Fifth Avenue LLC ("Saks"), and Lord & Taylor LLC ("Lord & Taylor") (collectively, "Defendants") seeking equitable relief and damages as set forth below.

## PRELIMINARY STATEMENT

1. On or about March 28, 2018, a notorious hacking syndicate announced the release for sale of over five million stolen credit and debit cards on the dark web.

2. Financial institutions subsequently confirmed that that the stolen information involved credit and debit cards used at Saks Fifth Avenue, Saks Fifth Avenue OFF 5th, and Lord & Taylor stores since May 2017. This breach ("Data Breach" or "Breach") is amongst the biggest and most damaging to ever hit retail companies.

3.      Plaintiff Debbie Carthan made several purchases from affected Saks Fifth Avenue, Saks Fifth Avenue OFF 5th, and Lord & Taylor affected stores during the relevant time-period using his credit card.

4.      Plaintiff Debbie Carthan subsequently experienced credit fraud, which required her to freeze and/or cancel one or more of their individual accounts and/or monitor her accounts. In particular, she was forced to call TD bank and change her PIN on her debit card multiple times because of fraudulent attempts to use her card to purchase merchandise such as shoes, coffee at Dunkin Donuts, food at Popeye's Chicken, coffee at Starbucks, and gas at a gas station in Long Island, NY.  Plaintiff has spent countless hours monitoring her accounts and dealing with issues from the Data Breach.

5.      In addition, she has continued to receive fraudulent emails seeking to obtain her personal information since the Data Breach.  Due to the fraudulent attempts or activity on her accounts and fraudulent emails attempts to obtain her personal information, plaintiff has continue to spend numerus hours monitoring her accounts to safeguard against fraud and theft and addressing issues from the Data Breach.

6.      Plaintiff Mark Wade made several purchases from affected Saks Fifth Avenue, Saks Fifth Avenue OFF 5th, and Lord & Taylor affected stores during the relevant time-period using his credit card.

7.      Plaintiff Mark Wade subsequently experienced credit fraud, which required him to freeze and/or cancel one or more of their individual accounts and/or monitor his accounts.  As a result of the Data Breach, he also purchased identity theft and credit monitoring through Equifax.  Due to the fraudulent attempts or activity on his accounts and fraudulent emails

attempts to obtain her personal information, plaintiff also has spent countless hours monitoring his accounts to safeguard against fraud and theft and addressing issues from the Data Breach.

8.      Plaintiffs bring this action on behalf of themselves and other similarly situated customers who had their personal information stolen as a result of Defendants' failure to protect customers' personal identification information ("PII" or "Confidential Information").

## JURISDICTION AND VENUE

9.      The jurisdiction of this Court is founded upon 28 U.S.C. § 1332(d) (the Class Action Fairness Act) in that this is a putative class action with more than 100 class members, more than $5 million in controversy, and the requisite diversity of citizenship.

10.     Venue is appropriate pursuant to 28 U.S.C. § 1391.  A substantial portion of the events and conduct giving rise to the violations alleged in this Complaint occurred in this District.

11.     This Court has personal jurisdiction over Defendants because they have continuous and systematic contacts with this forum, Saks and Lord & Taylor maintain their corporate headquarters and registered agent in this District, and the events giving rise to this matter arose out of those contacts.

## PARTIES

12.     Plaintiff Debbie Carthan is a citizen and resident of Roselle Park, New Jersey.

13.     Plaintiff Mark Wade is a citizen and resident of Ben Wheeler, Texas.

14.     Defendant Saks is a Limited Liability Company, organized under the laws of Massachusetts and registered to operate in New York State.  Saks' headquarters and principal place of business is located in this District at 12 East 49th Street, New York, NY 10017.

15.     Defendant Lord & Taylor is a Limited Liability Company, organized under the laws of Delaware and registered to operate in New York State.  Lord & Taylor's headquarters and principal place of business is located in this District at 424 Fifth Avenue, New York, NY 10018.

16.     Defendant HBC is a foreign corporation headquartered in Toronto, Canada.  HBC owns and operates department stores throughout Canada and the United States.  Saks and Lord & Taylor are subsidiaries of HBC.

17.     Plaintiffs allege upon information and belief that at all relevant times Defendants HBC, Saks, and Lord & Taylor shared common management, officers, owners, and directors, and that they carried out a joint scheme, business plan, or policy, and that acts or omissions of each are attributable to the other.

## STATEMENT OF COMMON FACTS

18.     On or about March 28, 2018, a hacking syndicate called "JokerStash" or "Fin7" announced the release for sale on the dark web of over five million stolen credit and debit cards. The release was named "BIGBADABOOM-2."

19.     JokerStash has been linked to a series of breaches, dating back years, including break-ins at Whole Foods Market, Chipotle Mexican Grill Inc., Omni Hotels & Resorts, and Trump Hotels.

20.     News of the breach was first reported by Gemini Advisory LLC ("Gemini"), a New York-based cybersecurity firm, on April 1, 2018.[1]  According to Gemini, the stolen credit and debit cards information had been used at Saks Fifth Avenue, Saks Fifth Avenue OFF 5th, and Lord & Taylor stores.

---

[1] https://geminiadvisory.io/fin7-syndicate-hacks-saks-fifth-avenue-and-lord-taylor

21.     Gemini estimates that the window of compromise was from May 2017 to present, and that the majority of stolen credit cards were used in stores located in New York and New Jersey.  Some were cards that were used by card owners as recently as last month in one of the affected stores.

22.     The full text of the Gemini report is as follows:

**Key Judgements**
On March 28, 2018, a JokerStash hacking syndicate announced the release for sale of over five million stolen credit and debit cards.
In cooperation with several financial organizations, we have confirmed with a high degree of confidence that the compromised records were stolen from customers of Saks Fifth Avenue and Lord & Taylor stores.
We estimate the window of compromise to be May 2017 to present.
Based on the analysis of the available data, the entire network of Lord & Taylor and 83 Saks Fifth Avenue locations have been compromised. The majority of stolen credit cards were obtained from New York and New Jersey locations.
As of this writing, approximately 125,000 records have been released for sale, although we expect the entire cache to become available in the following months.

**Executive Summary**
On March 28, 2018, a notorious hacking JokerStash syndicate, also known as Fin7 announced the latest breach of yet another major corporation, with more than five million stolen payment cards offered for sale on the dark web. Several large financial institutions have confirmed that all tested records had been used before at Saks Fifth Avenue, Saks Fifth Avenue OFF 5th, a discounted offset brand of luxury Saks Fifth Avenue stores, as well as Lord & Taylor stores.

Although at this moment it is close to impossible to ascertain the exact window of compromise, the preliminary analysis suggests that criminals were siphoning the information between May 2017 to present. Based on the analysis of the available data, the entire network of Lord & Taylor and 83 Saks Fifth Avenue locations have been compromised. The majority of stolen credit cards were obtained from New York and New Jersey locations.

**Assessment**
On March 28, 2018, notorious hacking JokerStash syndicate infamous for its long streak of successful high-profile breaches, including Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels and many more, has announced the release of the newest batch of compromised records called BIGBADABOOM-2.

With the declared number of compromised payment cards being in excess of five million, the current hacking attack is amongst the biggest and most damaging to ever hit retail companies.

Using our analytical tools, which were specifically developed in order to empower financial companies to monitor assets portfolio exposure within the deep & dark web, we have established with a high level of confidence that victims of the attack are Saks Fifth Avenue, Saks Fifth Avenue OFF 5th, a discounted outlet of the luxury department store Saks Fifth Avenue, and Lord & Taylor Stores. Both companies are operated by Canadian retail business group Hudson's Bay Company (HBC). Despite the fact that HBC owns other retail brands, namely Galeria Kaufhof, and Home Outfitters, it appears that only Saks Fifth Avenue and Lord & Taylor were affected in this breach. The company also operates Gilt.com, a popular online shopping website.

As of this writing, only a minor part of compromised records have been offered for sale, with approximately 35,000 records for Saks Fifth Avenue and 90,000 records for Lord & Taylor.

Considering the rather standard practice of marketplace operators in releasing stolen data gradually in order to avoid oversaturation of the market and to minimize the chances of identification of stolen records by the banks, it will take at least several months before the entire archive is offered for sale. For example, in the previous breach of Jason's Deli Restaurants in December of 2017, the JokerStash syndicate has announced that they stole five million payment cards; however, up until now, only approximately a quarter of all payment cards were released for sale.

Despite the fact that the number of stolen records in both breaches is identical, the potential damage to cardholders could be significantly higher in the latest hacking attack. While diners at the affordable fast-food chain are less likely to purchase hi-end electronics like Apple computers and Microsoft Surface Books, which are coveted by cybercriminals for their high liquidity, it is also easier for banks to identify unusual shopping patterns and promptly block out-of-pattern transactions. However, cardholders who frequently shop at luxury retail chains like Saks Fifth Avenue are more likely to purchase high-ticket items regularly; therefore, it will be extremely difficult to distinguish fraudulent transactions from those of a legitimate nature, allowing criminals to abuse stolen payment cards and remain undetected for a longer period of time.

**Analysis**

Based on the analysis of records that are currently available, it appears that all Lord & Taylor and 83 US based Saks Fifth Avenue locations have been compromised. In addition, we identified three potentially compromised stores

located in Ontario, Canada. However, the majority of stolen credit cards were obtained from New York and New Jersey locations.[2]

23.     On the same day Gemini issued its report, the story was picked up by multiple major news outlets,[3] and HBC issued the following press release:

> HBC Provides Information about Data Security Issue in Certain Saks Fifth Avenue, Saks OFF 5th, and Lord & Taylor Stores in North America
> NEW YORK & TORONTO--(BUSINESS WIRE)-- HBC (TSX:HBC) today announced that it has become aware of a data security issue involving customer payment card data at certain Saks Fifth Avenue, Saks OFF 5th, and Lord & Taylor stores in North America. While the investigation is ongoing, there is no indication at this time that this affects the Company's e-commerce or other digital platforms, Hudson's Bay, Home Outfitters, or HBC Europe.
>
> The Company deeply regrets any inconvenience or concern this may cause. HBC wanted to reach out to customers quickly to assure them that they will not be liable for fraudulent charges that may result from this matter. HBC has identified the issue, and has taken steps to contain it. Once the Company has more clarity around the facts, it will notify customers quickly and will offer those impacted free identity protection services, including credit and web monitoring. HBC encourages customers to review their account statements and contact their card issuers immediately if they identify activity or transactions they do not recognize.
>
> The Company is working rapidly with leading data security investigators to get customers the information they need, and the investigation is ongoing. HBC is also coordinating with law enforcement authorities and the payment card companies.
>
> For further information, please visit https://www.saksfifthavenue.com/security-information/notice.html, https://www.saksoff5th.com/security-information/notice.html, or https://www.lordandtaylor.com/security-information/notice.html.
>
> In the coming days, customer care representatives will be available through a dedicated call center to provide further information. The call center information will be posted on the above websites at that time.[4]

---

[2] *Id.*
[3] *See, e.g.*, Vindu Goel and Rachel Abrams, *Card Data Stolen from 5 Million Saks and Lord & Taylor Customers,* https://www.nytimes.com/2018/04/01/technology/saks-lord-taylor-credit-cards.html (last accessed April 13, 2018); Robert McMillan and Suzanne Kapner, Saks, Lord & Taylor Hit with Data Breach, https://www.wsj.com/articles/saks-lord-taylor-hit-with-data-breach-1522598460 (last accessed April 16, 2018).
[4] http://investor.hbc.com/releasedetail.cfm?ReleaseID=1062423 (last visited on April 16, 2018)

24.     Thus far, at least 125,000 cards that had been used at Saks or Lord & Taylor stores have been released for sale by the hackers, according to Gemini Advisory.  JokerStash is known to release credit-card data in smaller batches to avoid flooding the market for illegally obtained payment credentials.  Thus, many months or even years may pass from the date of breach to when a victim experiences credit or identity fraud.

25.     Plaintiffs became aware of the Breach through news reports on or about early April 2018.

26.     Plaintiffs shopped at one or more of Defendants' affected stores, and subsequently experienced credit card fraud.

27.     According to reports, the hackers penetrated the retailers' point of sale systems.

28.     Plaintiffs allege upon information and belief that Defendants' substandard security practices were a direct and proximate cause for the massive data breach compromising the personal information of millions of Americans.

29.     As a direct and proximate result of Defendant's actions and omissions in disclosing and failing to protect Plaintiffs' PII, Plaintiffs have been damaged.

30.     Plaintiffs and Class Members have also been placed at a substantial risk of harm in the form of credit fraud or identity theft and will likely incur additional damages in order to prevent and mitigate credit fraud or identity theft.  In addition to fraudulent charges and damage to their credit, Plaintiffs and Class Members spent or will spend substantial time and expense (a) monitoring their accounts to identify fraudulent or suspicious charges; (b) cancelling and reissuing cards; (c) purchasing credit monitoring and identity theft prevention services; (d) attempting to withdraw funds linked to compromised, frozen accounts; (e) removing withdrawal and purchase limits on compromised accounts; (f) communicating with financial institutions to

dispute fraudulent charges; (g) resetting automatic billing instructions; (h) freezing and unfreezing credit bureau account information; (i) cancelling and re-setting automatic payments as necessary; and (j) paying late fees and declined payment penalties as a result of failed automatic payments.

31.     Additionally, Plaintiffs and the Class Members have suffered or are at increased risk of suffering from, *inter alia*, the loss of the opportunity to control how their PII is used, the diminution in the value and/or use of their PII entrusted to Defendants, and loss of privacy.

## CLASS ALLEGATIONS

32.     Plaintiffs bring this Complaint on behalf of themselves and the following Class ("Nationwide Class"):

> All persons whose personal information was compromised as a result of the data breach disclosed by HBC on April 1, 2018.[5]

33.     The Class and definition specifically excludes: (a) any persons or other entity currently related to or affiliated with Defendants; (b) any Judge presiding over this action and members of his or her family; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

34.     Plaintiffs also seek to certify the following Subclasses of the Nationwide Class:

> All Class Members who are residents of New Jersey (the "New Jersey Subclass"); and

> All Class Members who are residents of Pennsylvania (the "Pennsylvania Subclass").

35.     Class-wide adjudication of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

---

[5] In the alternative, Plaintiffs also seek to certify Subclasses for class members from their home states including the states of New York, Pennsylvania, New Jersey and Texas.

36.     *Numerosity*: The Class Members, estimated at 5 million, are so numerous that joinder of individual claims is impracticable.   The Class Members can be readily identified through Defendants' records.

37.     *Commonality*: There are significant questions of fact and law common to the Class Members.  These issues include but are not limited to:

    a.     Whether Defendants failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

    b.     Whether the security provided by Defendants was satisfactory to protect customer information as compared to industry standards;

    c.     Whether Defendants misrepresented or failed to provide adequate information to customers regarding the type of security practices used;

    d.     Whether Defendants' conduct was intentional, willful, or negligent;

    e.     Whether Defendants violated any and all statutes and/or common law listed herein;

    f.     Whether the Class suffered damages as a result of Defendants' conduct or omissions; and

    g.     Whether Class Members are entitled to injunctive, declarative, and monetary relief as a result of Defendants' conduct.

38.     *Typicality*: Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and all Class Members have been adversely affected and damaged in that Defendants failed to adequately protect their PII to the detriment of Plaintiffs and the Class.

39.     *Adequacy of Representation*: The proposed Class Representatives will fairly and adequately represent the Class because they have the Class Members' best interest in mind, their individual claims are co-extensive with those of the Class, and they are represented by qualified counsel experienced in class action litigation of this nature.

40.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all Class Members is impracticable.  Many Class Members are without the financial resources necessary to pursue this matter.   Even if some Class Members could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed.   Individual litigation increases the time and expense of resolving a common dispute concerning Defendants' actions toward an entire group of individuals.  Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

41.     The Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

42.     The Class may also be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to Class Members will predominate

over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

## COUNT I

### *NEGLIGENCE*

**(Brought on Behalf of the Nationwide Class or, Alternatively, the Statewide Classes)**

43.    Plaintiffs repeat and reaffirm, as if fully set forth, the allegations of the preceding paragraphs.

44.    Defendants owed a duty of care to Plaintiffs and Class Members to use reasonable means to secure and safeguard the entrusted Confidential Information, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of their systems.

45.    Defendants breached the aforementioned duty when they failed to use security practices that would protect the Confidential Information provided to them by consumers.

46.    Defendants further breached the aforementioned duty by failing to design, adopt, implement, control, manage, monitor, update, and audit its processes, controls, policies, procedures, and protocols for complying with the applicable laws and safeguarding and protecting Plaintiffs' and Class Members' PII within their possession, custody, and control.

47.    The law also imposes an affirmative duty on Defendants to timely disclose the theft of the PII so that Class Members can be vigilant in attempting to determine if any of their accounts or assets have been stolen through identity theft.

48.    Through their failure to provide timely and clear notification of the data breach to consumers, Defendants negligently prevented Class Members from taking meaningful, proactive steps to prevent and investigate possible identity theft.  As a direct and proximate cause of failing

to use appropriate security practices, Defendants' system was hacked causing Plaintiffs' and Class Members' PII to be disseminated to unauthorized individuals.

49.     Defendants admitted that Plaintiffs' and Class Members' PII was wrongfully disclosed as a result of the Breach.

50.     The Breach caused direct and substantial damages to Plaintiffs and Class Members, as well as the possibility of future harm through the dissemination of private information and the greatly enhanced risk of credit fraud or identity theft.

51.     By engaging in the forgoing acts and omissions, Defendants committed the common law tort of negligence.  For all the reasons stated above, Defendants' conduct was negligent and departed from reasonable standards of care including, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to Class Members' PII; and failing to provide Class Members with timely and sufficient notice that their sensitive PII had been compromised.

52.     Neither Plaintiffs nor Class Members contributed to the Breach or subsequent misuse of their PII as described in this Complaint.  As a direct and proximate result of Defendants' actions and inactions, Plaintiffs and Class Members have been put at an increased risk of credit fraud or identity theft and Defendants have an obligation to mitigate damages through credit and identity monitoring services.  Defendants are liable to Plaintiffs and Class Members for the reasonable costs of future credit and identity monitoring services for a reasonable period of time, substantially in excess of one year.  Defendants are also liable to Plaintiffs and Class Members to the extent that they have directly sustained damages as a result of identity theft or other unauthorized use of their Confidential Information.

## COUNT II

### *NEGLIGENCE PER SE*

**(Brought on Behalf of the Nationwide Class or, Alternatively, the Statewide Classes)**

53.     Plaintiffs repeat and reaffirm, as if fully set forth, the allegations of the preceding paragraphs.

54.     Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security to safeguard the personal information, including credit card information, of Plaintiffs and Class Members.

55.     The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect personal information.  The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

56.     Defendants solicited, gathered, and stored personal information, including credit card information, of Plaintiffs and the Class Members to facilitate sales transactions which affect commerce.

57.     Defendants violated the FTCA by failing to use reasonable measures to protect personal information of Plaintiffs and the Class Members and not complying with applicable industry standards, as described herein.

58.     Defendants' violation of the FTCA constitutes negligence per se.

59.     Plaintiffs and the Class Members are within the class of persons that the FTCA was intended to protect.

60.     The harm that occurred as a result of the Breach is the type of harm the FTCA was intended to guard against.  The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class Members.

61.     As a direct and proximate result of Defendants' negligence per se, Plaintiffs and the Class Members have suffered, and continue to suffer, damages arising from the Breach.  For instance, Class Members' accounts have been cancelled, suspended, or otherwise rendered unusable as a result of the Breach and resulting fraudulent charges.  Class Members have also had to pay late fees and spend valuable time and effort scrutinizing their accounts, and communicating with their financial institutions to dispute fraudulent charges.

**COUNT III**

***BREACH OF IMPLIED CONTRACT***

**(Brought on Behalf of the Nationwide Class or, Alternatively, the Statewide Classes)**

62.     Plaintiffs repeat and reaffirm, as if fully set forth, the allegations of the preceding paragraphs.

63.     When Plaintiffs and Class Members provided their PII to Defendants in making purchases at Defendants' stores, they entered into implied contracts by which Defendants agreed to protect their PII and timely notify them in the event of a data breach.

64.     Defendants invited their customers, including Plaintiffs and the Class Members, to make purchases at their locations using payment cards in order to increase sales by making purchases more convenient.

65.     An implicit part of the offer was that Defendants would safeguard the PII using

reasonable or industry-standard means and would timely notify Plaintiffs and the Class Members in the event of a data breach.

66.     Defendants also affirmatively represented that it would continually review and enhance security after a prior data leak.

67.     Based on the implicit understanding and also on Defendants' representations, Plaintiffs and the Class Members accepted the offers and provided Defendants their PII by using their payment cards in connection with purchases at Defendants' locations during the period of the Breach.

68.     Plaintiffs and Class Members would not have provided their PII to Defendants had they known that Defendants would not safeguard their PII as promised or provide timely notice of a data breach.

69.     Plaintiffs and Class Members fully performed their obligations under the implied contracts with HBC.

70.     Defendants breached the implied contracts by failing to safeguard Plaintiffs' and Class Members' PII and failing to provide them with timely and accurate notice when their PII was compromised in the data breach.

71.     The losses and damages Plaintiffs and Class Members sustained described herein were the direct and proximate result of Defendants' breaches of their implied contracts with them.

### COUNT IV

#### *INVASION OF PRIVACY*

**(Brought on Behalf of the Nationwide Class or, Alternatively, the Statewide Classes)**

72.     Plaintiffs repeat and reaffirm, as if fully set forth, the allegations of the preceding

paragraphs.

73.     Defendants invaded Plaintiffs' and the Class Members' right to privacy by allowing the unauthorized access to Plaintiffs' and Class Members' PII and by negligently maintaining the confidentiality of Plaintiffs' and Class Members' PII, as set forth above.

74.     The intrusion was offensive and objectionable to Plaintiffs, the Class Members, and to a reasonable person of ordinary sensibilities in that Plaintiffs' and Class Members' PII was disclosed without prior written authorization of Plaintiffs and the Class.

75.     The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiffs and the Class Members provided and disclosed their PII to Defendants privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure.  Plaintiffs and the Class Members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

76.     As a proximate result of Defendants' above acts, Plaintiffs' and the Class Members' PII was viewed, printed, distributed, and used by persons without prior written authorization and Plaintiffs and the Class Members suffered damages.

77.     Defendants are guilty of oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiffs' and the Class Members' PII with a willful and conscious disregard of Plaintiffs' and the Class Members' right to privacy.

78.     Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause Plaintiffs and the Class Members great and irreparable injury in that the PII maintained by Defendants can be viewed, printed, distributed, and used by unauthorized persons.  Plaintiffs and Class Members have no adequate remedy at law for the

injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiffs and the Class.

## COUNT V

### *DECLARATORY RELIEF*

**(Brought on Behalf of the Nationwide Class or, Alternatively, the Statewide Classes)**

79.     Plaintiffs repeat and reaffirm, as if fully set forth, the allegations of the preceding paragraphs.

80.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*.; Fed. R. Civ. P. 57, Plaintiffs and Class Members request the Court to enter a judgment declaring, *inter alia*, (i) Defendants owed (and continue to owe) a legal duty to safeguard and protect Plaintiffs' and Class Members' confidential and sensitive consumer credit information, and timely notify them about any security breach, (ii) Defendants breached (and continue to breach) such legal duties by failing to safeguard and protect Plaintiffs' and Class Members' confidential and sensitive payment consumer credit information, and (iii) Defendants' breach of their legal duties directly and proximately caused the Breach, and the resulting damages, injury, and harm suffered by Plaintiffs and Class Members.

## COUNT VI

### *UNJUST ENRICHMENT*

**(Brought on Behalf of the Nationwide Class)**

81.     Plaintiffs repeat and reaffirm, as if fully set forth, the allegations of the preceding paragraphs.

82.     Defendants, by way of their acts and omissions, knowingly and deliberately enriched themselves by saving the costs they reasonably should have expended on security

measures to secure Plaintiffs' and Class Members' PII.

83.     Instead of providing for a reasonable level of security that would have prevented the Breach -- as is common practice among companies entrusted with such PII -- Defendants instead consciously and opportunistically calculated to increase their own profits at the expense of Plaintiffs and Class Members.

84.     Nevertheless, Defendants continued to obtain the benefits conferred on them by Plaintiffs' and Class Members' purchases.

85.     Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result.  As a result of Defendants' decision to profit rather than provide requisite security, and the resultant Breach disclosing Plaintiffs' and Class Members' PII, Plaintiffs and Class Members suffered and continue to suffer considerable injuries in the forms of, *inter alia*, attempted identity theft, time and expenses mitigating harms, diminished value of PII, loss of privacy, and increased risk of harm.

86.     Thus, Defendants engaged in opportunistic conduct in spite of their duties to Plaintiffs and Class Members, wherein they profited from interference with Plaintiffs' and Class Members' legally protected interests.  As such, it would be inequitable, unconscionable, and unlawful to permit Defendants to retain the benefits it derived as a consequence of their conduct.

87.     Accordingly, Plaintiffs, on behalf of themselves and the Class, respectfully request this Court award relief in the form of restitution and/or compensatory damages.

## COUNT VII

### *INJUNCTIVE RELIEF*

**(Brought on Behalf of the Nationwide Class or, Alternatively, the Statewide Classes)**

88.     Plaintiffs repeat and reaffirm, as if fully set forth, the allegations of the preceding

paragraphs.

89. Defendants' above-described wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach have caused (and will continue to cause) Plaintiffs and Class Members to suffer irreparable harm in the form of, *inter alia*, economic damages and other injury and actual harm in the form of, *inter alia,* (i) actual identity theft and identity fraud, (ii) invasion of privacy, (iii) loss of the intrinsic value of their privacy, (iv) breach of the confidentiality of their consumer reports and consumer credit information, (v) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, (vi) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages, and (vii) the imminent, immediate, and continuing increased risk of ongoing identity theft and identity fraud. Such irreparable harm will not cease unless and until enjoined by this Court.

90. Plaintiffs and Class Members, therefore, are entitled to injunctive relief and other appropriate affirmative relief including, *inter alia*, an order compelling Defendants to (i) notify each person whose consumer credit information was exposed in the security breach, (ii) provide credit monitoring to each such person for at least six years, (iii) establish a fund (in an amount to be determined) to which such persons may apply for reimbursement of the time and out-of-pocket expenses they incurred to remediate identity theft and/or identity fraud (*i.e.*, data breach insurance), and (iv) discontinue their above-described wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach.

91. Plaintiffs and Class Members also are entitled to injunctive relief requiring Defendants to implement and maintain data security measures, policies, procedures, controls, protocols, and software and hardware systems, including, *inter alia*, (i) engaging third-party

security auditors/penetration testers and internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's computer systems on a periodic basis, (ii) engaging third-party security auditors and internal personnel to run automated security monitoring, (iii) auditing, testing, and training their security personnel regarding any new or modified procedures, (iv) conducting regular database scanning and security checks, (v) regularly evaluating web applications for vulnerabilities to prevent web application threats, and (vi) periodically conducting internal training and education to inform internal data security personnel how to identify and contain data security lapses.

92.     If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury in the event Defendants commit another security lapse, the risk of which is real, immediate, and substantial.

93.     The hardship to Plaintiffs and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued.  Among other things, if Defendants suffer another massive security lapse, Plaintiffs and Class Members will likely again incur millions of dollars in damages.  On the other hand, and setting aside the fact that Defendants have a pre-existing legal obligation to employ adequate customer data security measures, Defendants' cost to comply with the above-described injunction they are already required to implement is relatively minimal.

94.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another security lapse, thereby eliminating the damages, injury, and harm that would be suffered by Plaintiffs, Class Members, and the millions of consumers whose confidential and sensitive consumer credit information would be compromised.

## COUNT VIII

### *VIOLATION OF NEW YORK'S DECEPTIVE ACTS AND PRACTICES LAW,*
### *N.Y. GEN. BUS. LAW § 349*

**(Brought on Behalf of the Nationwide Class)**

95. Plaintiffs repeat and reaffirm, as if fully set forth, the allegations of the preceding paragraphs.

96. Defendants' business acts and practices alleged herein constitute deceptive acts or practices under New York General Business Law § 349 ("NYGBL").

97. The NYGBL generally prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."

98. Defendants engaged in deceptive acts or practices by engaging the course of conduct described herein.

99. Defendants knew of or should have known of vulnerabilities and defects in their data security systems storing PII of the Plaintiffs and Class Members before the Breach, but concealed that information in violation of the NYGBL.

100. Defendants engaged in deceptive acts and practices by failing to disclose and actively concealing known data-security defects, and by otherwise deceiving Plaintiffs and the Class Members.

101. More specifically, Defendants engaged in deceptive trade practices by:

- Misrepresenting or omitting material facts to Plaintiffs and the Class Members regarding the adequacy of their data security procedures protecting PII;

- Misrepresenting or omitting material facts to Plaintiffs and the Class Members regarding their failure to comply with relevant state and federal

laws designed to protect consumers' privacy and PII;

- Failing to discover and disclose the data breach to Plaintiffs and the Class in a timely and accurate manner;

- Engaging in unfair, unlawful, and deceptive acts and practices by failing to maintain the privacy and security of Class Members' PPI, in violation of duties imposed by public policies reflected in applicable federal and state laws, resulting in the data breach. These deceptive acts and practices were likely to and did deceive Plaintiffs and the Class Members regarding the lack of security protecting their PII;

- Engaging in unfair, unlawful, and deceptive acts and practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Class Members' PII from further unauthorized disclosure, release, data breaches, and theft.

102.    These deceptive acts and practices were likely to and did deceive Plaintiffs and the Class Members regarding the lack of security protecting their PII.

103.    The above unlawful, unfair, and deceptive acts and practices by Defendants were immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Plaintiffs and Class Members that they could not reasonably avoid, this substantial injury outweighed any benefits to consumers or to competition.

104.    Defendants intentionally and knowingly misrepresented such material facts with an intent to mislead Plaintiffs and Class Members.

105.    Defendants owed Plaintiffs and Class Members a duty to disclose their data-security defects because Defendants possessed exclusive knowledge regarding the vulnerability

of the PII, concealed the data security defects from Plaintiffs and the Class Members, and made incomplete representations regarding their data security systems while withholding material facts from Plaintiffs and the Class Members.

106.    These representations and omissions were material to the Plaintiffs and Class Members due to the value and sensitivity of the PII.

107.    Plaintiffs and the Class Members suffered ascertainable loss as a result of Defendants' misrepresentations, concealment, and omissions of material information as alleged herein.

108.    As a direct and proximate result of Defendants' violation of NYGBL, Plaintiffs and Class Members have suffered damages.

109.    Plaintiffs seeks an order enjoining Defendants' deceptive acts and practices, and awarding attorneys' fees, and any other just and proper relief available under NYGBL.

110.    In addition to or in lieu of actual damages, Plaintiffs and Class Members seek statutory damages for each injury and violation which has occurred.

111.    New York has a legitimate interest in applying its laws to adjudicate this dispute and to ensure that its residents comply with its consumer protection laws while conducting business in New York.   Upon information and belief, Defendants' security practices were designed, established, and initiated, at least in part from New York and Defendants' April 1, 2018 Press Release was issued from New York.   Accordingly, New York law has significant contacts to the claims asserted by this Class so that application of its consumer fraud laws to all class claimants is not arbitrary, capricious, or unfair and is not a violation of due process.

## COUNT IX

### *VIOLATION OF PENNYSLVANIAS UNFAIR TRADE PRACTICES AND CONSUMER PROTECION LAW, § 201-2 &202-3 et. seq.*

**(Brought on Behalf of the Pennsylvania Subclass)**

112.    Pennsylvania Plaintiffs repeat and reaffirm, as if fully set forth, the allegations of the preceding paragraphs.

113.    Defendants, Plaintiffs, and the Pennsylvania Class are "Person[s]" within the meaning of Pennsylvania Unfair Practices and Consumer Protection Law ("UTPCPL" 73 PS §201, et seq.)

114.    The Pennsylvania UTPCPL declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce …."

115.    Plaintiffs and Defendants' business acts and practices alleged herein constituted deceptive acts or practices under Pennsylvania Unfair Practices and Consumer Protection Law ("UTPCPL" 73 PS §201, et seq.).

116.    Defendants engaged in deceptive acts or practices by engaging in the course of conduct described herein.

117.    Defendants knew of or should have known of vulnerabilities and defects in their data security systems storing PII of the Plaintiffs and Class Members before the Breach, but concealed that information in violation of the UTPCPL.

118.    Defendants engaged in deceptive acts and practices by failing to disclose and actively concealing known data-security defects, and by otherwise deceiving Plaintiffs and the Class Members.

119.    More specifically, Defendants engaged in deceptive trade practices by:

- Misrepresenting or omitting material facts to Plaintiffs and the Class Members regarding the adequacy of their data security procedures protecting PII in violation of 73 Pa. Cons. Stat. §201-3(4) (v), (vii), (ix) and (xxi);

- Misrepresenting or omitting material facts to Plaintiffs and the Class Members regarding their failure to comply with relevant state and federal laws designed to protect consumers' privacy and PII in violation of 73 Pa. Cons. Stat. §201-3(4)(v), (vii), (ix), and (xxi);

- Failing to discover and disclose the data breach to Plaintiffs and the Class in a timely and accurate manner in violation of 73 Pa. Cons, Stat §2303(a);

- Engaging in unfair, unlawful, and deceptive acts and practices by failing to maintain the privacy and security of Class Members' PPI, in violation of duties imposed by public policies reflected in applicable federal and state laws, resulting in the data breach. These deceptive acts and practices were likely to and did deceive Plaintiffs and the Class Members regarding the lack of security protecting their PII;

- Engaging in unfair, unlawful, and deceptive acts and practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Class Members' PII from further unauthorized disclosure, release, data breaches, and theft.

120.    Defendants intentionally and knowingly misrepresented such material facts with an intent to mislead Plaintiffs and Class Members.

121.    The above unlawful, unfair, and deceptive acts and practices by Defendants were

immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Plaintiffs and Class Members that they could not reasonably avoid, this substantial injury outweighed any benefits to consumers or to competition.

122.    Defendants owed Plaintiffs and Class Members a duty to disclose their data-security defects because Defendants possessed exclusive knowledge regarding the vulnerability of the PII, concealed the data security defects from Plaintiffs and the Class Members, and made incomplete representations regarding their data security systems while withholding material facts from Plaintiffs and the Class Members.

123.    These representations and omissions were material to the Plaintiffs and Class Members due to the value and sensitivity of the PII.

124.    Plaintiffs and the Class Members suffered ascertainable loss as a result of Defendants' misrepresentations, concealment, and omissions of material information as alleged herein.

125.    As a direct and proximate result of Defendants' violation of UTPCPL, Plaintiffs and Class Members have suffered damages.

126.    Plaintiffs seeks an order enjoining Defendants' deceptive acts and practices, and awarding attorneys' fees, and any other just and proper relief available under UTPCPL.

127.    In addition to or in lieu of actual damages, Plaintiffs and Class Members seek statutory damages for each injury and violation which has occurred.

128.    Plaintiffs and Class Members seek relief seek relief under 73 Pa. Cons. Stat. §201-9.2, including, but not limited to, injunctive relief, actual damages, or $100 per Subclass member whichever is greater, treble damages, and attorneys' fees and costs.

## COUNT X

### *VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT, §§ 56, 8-1, et. seq.*

### (Brought on Behalf of the New Jersey Subclass)

129.    New Jersey Plaintiffs repeat and reaffirm, as if fully set forth, the allegations of the preceding paragraphs.

130.    Defendants sell "merchandise," as meant by N.J. Stat. Ann., by offering its good or services to the public.

131.    Defendants operating in New Jersey engaged in unconscionable and deceptive acts and practices, misrepresentations, and concealment, suppression, and omission of material facts with respect to the sale and advertisement of its goods and services in violation of N.J. Sta. Ann. §§ 56, 8-2.

132.    Plaintiffs and Defendants' business acts and practices alleged herein constituted deceptive acts or practices under New Jersey Consumer Fraud act ("NJCFA")

133.    Defendants engaged in deceptive acts or practices by engaging in the course of conduct described herein.

134.    Defendants knew of or should have known of vulnerabilities and defects in their data security systems storing PII of the Plaintiffs and Class Members before the Breach, but concealed that information in violation of the NJCFA.

135.    Defendants engaged in deceptive acts and practices by failing to disclose and actively concealing known data-security defects, and by otherwise deceiving Plaintiffs and the Class Members.

136.    More specifically, Defendants engaged in deceptive trade practices by:

- Misrepresenting or omitting material facts to Plaintiffs and the Class

Members regarding the adequacy of their data security procedures protecting PII;

- Misrepresenting or omitting material facts to Plaintiffs and the Class Members regarding their failure to comply with relevant state and federal laws designed to protect consumers' privacy and PII;

- Failing to discover and disclose the data breach to Plaintiff and the Class in a timely and accurate manner in violation of N.J. Stat. Ann. § 56, 8-163(a);

- Engaging in unfair, unlawful, and deceptive acts and practices by failing to maintain the privacy and security of Class Members PPI, in violation of duties imposed by public policies reflects in applicable federal and state laws, resulting in the data breach. These deceptive acts and practices were likely to and did deceive Plaintiffs and the Class Members regarding the lack of security protecting their PII;

- Engaging in unfair, unlawful, and deceptive acts and practices by failing to take proper action following the data breach to enact adequate privacy and security measures and protect Class Members PII from further unauthorized disclosure, release, data breaches, and theft.

137.    Defendants intentionally and knowingly misrepresented such material facts with an intent to mislead Plaintiffs and Class Members.

138.    The above unlawful, unfair, and deceptive acts and practices by Defendants were immoral, unethical, oppressive and unscrupulous. These acts caused substantial injury to Plaintiffs and Class Members that they could not reasonably avoid, this substantial injury

outweighed any benefits to consumers or to competition.

139.    Defendants owed Plaintiffs and Class Members a duty to disclose their data-security defects because Defendants possessed exclusive knowledge regarding the vulnerability of the PII, concealed the data security defects from Plaintiffs and the Class Members, and made incomplete representations regarding their data security systems while withholding material facts from Plaintiffs and the Class Members.

140.    These representations and omissions were material to the Plaintiffs and Class Members due to the value and sensitivity of the PII.

141.    Plaintiffs and the Class Members suffered ascertainable loss as a result of Defendants' misrepresentations, concealment, and omissions of material information as alleged herein.

142.    As a direct and proximate result of Defendants' violation of NJCFA, Plaintiffs and Class Members have suffered damages.

143.    Plaintiffs seeks an order enjoining Defendants' deceptive acts and practices, and awarding attorneys' fees, and any other just and proper relief available under NJCFA.

144.    In addition to or in lieu of actual damages, Plaintiffs and Class Members seek statutory damages for each injury and violation which has occurred.

145.    Plaintiffs and Class Members seek relief seek relief under N.J. Stat. Ann. § 56, 8-1-19, including, but not limited to, injunctive relief, actual damages, treble damages, and attorneys' fees and costs.

## COUNT XI

### *NEW JERSEY CONSUMER SECURITY BREACH DISCLOSURE ACT,*
### *N.J. STAT. ANN. §§ 56, 8-163, et. seq.*

### (Brought on Behalf of the New Jersey Subclass)

146.    Plaintiffs repeats and reaffirms, as if fully set forth, the allegations of preceding paragraphs.

147.    Under N.J. Stat. Ann. §§ 56, 8-163(b), "[A]ny business . . . that complies or maintains computerized records that include personal information on behalf of another business or public entity shall notify the business or public entity, who shall notify its New Jersey customers . . . of any breach of security of the computerized records immediately following discovery, if the personal information was, or is reasonably believed to have been, accessed by an unauthorized person".

148.    Defendants are in a business that compiles or maintains computerized records that include personal information on behalf of another business under N.J. Stat. Ann. §§ 56, 8-163(b).

149.    Plaintiffs and New Jersey subclass members PII (including but not limited to names, addresses, and social security numbers) includes personal information covered under N.J. Stat. Ann. §§ 56, 8-163, *et seq*.

150.    Because Defendants discovered a breach of its security system in which personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured, Defendants had an obligation to disclose the data breach in a timely and accurate fashion as mandated under N.J. Stat. Ann. §§ 56, 8-163, *et seq.*

151.    By failing to disclose the data breach in a timely and accurate manner, Defendants violated N.J. Stat. Ann. §§ 56, 8-163(b).

152.    As a direct and proximate result of the Defendants' violations of N.J. Stat. Ann.

§§ 56, 8-163(b), Plaintiffs and New Jersey class members suffered the damages described above.

153.    Plaintiffs and New Jersey class members seek relief under N.J. Stat. Ann. §§ 56, 8-19, including but not limited to actual damages, attorneys' fees and costs, and injunctive relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, for themselves and Class Members, respectfully request that (i) this action be certified as a class action, (ii) Plaintiffs be designated the Class Representatives, and (iii) Plaintiffs' counsel be appointed as Class Counsel. Plaintiffs, for themselves and Class Members, further requests that upon final trial or hearing, judgment be awarded against Defendants, in Plaintiffs' favor for:

(i) compensatory and punitive damages in an amount to be determined by the trier of fact;

(ii) declaratory and injunctive relief (as set forth above);

(iii) attorneys' fees, litigation expenses, and costs of suit incurred through the trial and any appeals of this case;

(iv) pre- and post-judgment interest on any amounts awarded; and

(v) such other and further relief the Court deems just and proper.

### JURY DEMAND

Plaintiffs, individually and on behalf of Class Members, respectfully demand a trial by jury on all claims and causes of action so triable.


Dated: May 14, 2018                                    Respectfully Submitted,

                                                       Todd S. Garber
                                                       Chantal Khalil
                                                       **FINKELSTEIN, BLANKINSHIP,**
                                                       **FREI-PEARSON & GARBER, LLP**

445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: 914-298-3281
Fax: 914-824-1561
tgarber@fbfglaw.com
ckhalil@fbfglaw.com


Charles E. Schaffer
(*Pro Hac Vice* applications forthcoming)
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Telephone:  (215) 592-1500
Facsimile:  (215) 592-4663
Email:  cschaffer@lfsblaw.com

*Attorneys for Plaintiffs*
*and the Putative Class*